# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| JAMES SCHILLINGER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No: _____ |
| ) | JURY DEMANDED |
| ) | |
| FEDEX CORPORATE SERVICES, INC. ) | |
| ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff, **JAMES SCHILLINGER**, by and through his attorneys, alleges for his Complaint as follows:

### I. INTRODUCTION

1. Plaintiff, **JAMES SCHILLINGER**, brings this action against FEDEX CORPORATE SERVICES, INC. an operating company of FedEx Corporation (FedEx) a holding company for legal relief to redress unlawful violations of Plaintiff's rights under the Americans with Disabilities Act with Amendments (ADAAA), 42 U.S.C. § 12101 et seq.

### II. THE PARTIES

**A. THE PLAINTIFF**

2. Plaintiff, **JAMES SCHILLINGER**, currently resides in Collierville, Tennessee and is a citizen of the United States.

**B. THE DEFENDANT**

3.      Defendant, FEDEX CORPORATE SERVICES, INC., an operating company of FedEx Corporation (FedEx), a holding company, is an employer of more than fifteen (15) persons who, at all times relevant hereto, employed Plaintiff in Memphis Collierville, which is located within the Western District of Tennessee, Western Division.

4.      The Defendant is bound by the law and regulations concerning the ADAAA.

### III. JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction).  The Plaintiff timely filed charges of discrimination with the EEOC under the ADA-AA.  He exhausted administrative processes by receiving a Notice of Right to Sue dated July 30, 2012 and he has commenced this action within the requisite ninety days.  Accordingly, he has exhausted administrative prerequisites under ADAAA.

6.      Venue is proper in the Western District of Tennessee under 28 U.S.C. §1391(b)-(c). Defendant conducts business within the Court's jurisdictional limits, and the claims at issue arose within the Court's jurisdictional limits.

### IV. FACTS

7.      Since childhood, Plaintiff has a "disability" as that term is defined by the ADAAA. Specifically, Plaintiff suffers from the medical impairments of attention deficit hyperactivity disorder (ADHD) and dyslexia. These impairments substantially limit Plaintiff in a number of major life activities.  The ADHD limits him, *inter alia,* in the major life activities of neurological process and it substantially affects his ability to concentrate, remember, perceive, organize, give attention, manage time, multi-task, and work certain types of jobs.  The dyslexia limits him, *inter alia*, in the major life activities of reading, reading comprehension, and visual processes.

8. Plaintiff began working for Defendant in 1998, and he received a promotion to manager in 1999.

9. In 2005, Plaintiff moved to Collierville at his own expense while staying employed with Defendant.

10. Plaintiff received favorable praise and awards for his job performance as a Senior Technical Analyst.

11. Around October-November of 2007, Defendant changed Plaintiff's position and job title from Sr. Technical Analyst to Senior Project/Process Analyst.

12. The new role was inconsistent with Plaintiff's disability—i.e. his impairments precluded him from being successful in the role. Accordingly, Plaintiff explained to his manager (José Cantú) how his impairments (the ADHD and dyslexia) affected him and how, predictably, he would not be successful in the new role. The manager advised Plaintiff to "try" and see how it worked out.

13. Plaintiff made numerous requests in 2008 to be moved back to his prior role or, at least, a role in which his disability would not preclude his success. In 2009, Plaintiff's new manager (Kandi Tippit) suggested Plaintiff complete a formal document called "Request for Accommodations"

14. In December of 2009, Plaintiff did submit a formal request for accommodations, but, in January of 2010, that request was denied.

15. Plaintiff believed the "interactive process" required by the ADAAA was not fulfilled, and, instead, the "process" was more a shuffling of paperwork without meaningful consultation and exchange. Therefore, in February of 2010, Plaintiff requested a meeting with human resources in order that the matter would receive more attention, detail, and interaction.

16. Regrettably, the meeting in February of 2010, which did take place, was not in the spirit of learning or interaction, but was a confrontational one. Ultimately, Plaintiff was informed he must stay in his current position despite its medical contraindications.

17. In May of 2010, Plaintiff utilized his doctor's assistance as suggested to complete another Accommodation Request form. This included numerous accommodation ideas, while Plaintiff made it plain that his disabilities made him ill suited for the current role which Defendant had placed him. Plaintiff's disabilities make him better suited to a position where multi-tasking is not as prevalent and, instead, where he can, within reason, manage one project at a time.

18. On June 30, 2010, Defendant's "FedEx Corporate Services, Inc. Human Capital Management Program (SHCMP) Committee met to consider Plaintiff's disability and need for accommodation. This group indicated that "some" of the requests were approved and that Plaintiff's manager, Kandi Tippett, and the HR Advisor, Patty Pierce, would be tasked with having interactive conversations with Plaintiff.

19. The further interaction resulted in a decision to place Plaintiff in a different position (a "reassignment") through working with a department known as "Career Ops." The target date for completion was August 15, 2010.

20. Plaintiff and Defendant identified a lateral reassignment to a position of Sr. Sales Analyst reporting to the VP of Sales. Plaintiff had his doctor examine the functions of this position as required by Defendant and provided, to Defendant, approval that the position would be a "good fit" for Plaintiff's strengths as well as his needs.

21. On or about October 1, 2010, instead of approving Plaintiff for a reassignment, Defendant, through its Human Resources Manager, stated that it was able to accommodate

Plaintiff in his present position and, therefore, "we are not legally required to place you in a different position."

22. It had become clear to Plaintiff that Defendant was not looking to assist him in a transition, but to argue that he was capable of performing the entirety of his existing position so that it could refuse his reassignment needs.

23. By October of 2010, Plaintiff's prior manager, Kandi Tippett, had been moved to a different position and Plaintiff given a different reporting assignment, Kimberly Nelson. Ms. Nelson was copied on the October 1, 2010 communication which closed by stating:

> In closing, our expectation is that you complete all the essential functions of your job as a senior Project/Process Analyst. However, if you feel at anytime that you are unable to perform your job, you may want to discuss with your doctor the possibility of applying for Short Term Disability.

24. Defendant's position illustrated a fundamental failing: Plaintiff was _not_ able to "complete all of the essential functions of [his] job"; and he sought _reassignment_ (which would allow Plaintiff _active_ work), as opposed to just placing him on "short term disability" (which would deprive him of active work).

25. Foreseeably, Plaintiff continued to struggle vocationally due to his disability. On November 11, 2010, Plaintiff's new manager, Kimberly Nelson, issued him a "letter of counseling for unacceptable performance" which included criticism for "missed deadlines and deliveries," and contained the notable statements: "When a missed task is identified or a new task required, it seems to impact your ability to smoothly transition from one task to another. This results in not only your missed deadlines and quality of work but also impacts your peer's workload." – and – "Your failure to properly plan and communicate tasks, required of your peers

by developing a project plan at the onset of this project, at times, has left your peers with insufficient time to properly manage their workday."

26. Forcing Plaintiff to endure a job which is contraindicated by his disability foreseeably resulted in frustration. Plaintiff advised Nelson, in response to her statement of "it seems to impact your ability to smoothly transition from one task to another" as follows:

"Yes, that is why it is called a Disability! This should not be new information, as you have been told about this disability for well over a year. But let me re-share the information provided in my request for accommodations from December of 2009:

- Impaired ability to plan multiple unrelated projects/tasks.
- Exceptional difficulty redirecting attention for one task that is interesting/engaging to one that is more routine in nature.
- General difficulty bringing tasks to completion.
- Tendency to have many things going on all at once, but none of them are finished.
- Difficulty with time management and remembering activities and sequences.
- Trouble remembering/organizing lists may even not remember to go to the store.

To discipline an employee with a known disability for not performing to standards after denying requested accommodations is also a violation of the ADA."

27. Plaintiff's response, which explained the discrimination, did not trigger compassion or learning by Defendant, or consideration of reassignment. It triggered anger, competitiveness, and adversarial response.

28.     On December 16, 2010, Kimberly Nelson issued a second "Letter of Warning for Unacceptable Performance" which included criticism of Plaintiff's time management and deadlines.

29.     Facing intransigency by Defendant—forcing him to work a position contrary to his disability, and bearing write-ups and possibly termination—Plaintiff took an FMLA leave in January of 2011.  The FMLA paperwork completed by Plaintiff's doctor indicated that his write-ups are "inexplicably problematic:  Attempts to deal with this situation have not been fruitful.  This group of variables, along with others, has seemingly resulted in a significant exacerbation of symptoms."  The doctor further wrote that Plaintiff needs "to apply his skills in a manner that takes into account his disabilities; job stress results in the opposite outcome when he is not afforded such accommodations."

30.     In January of 2011, in light of the discipline being issued against him, Plaintiff again stated his need for reasonable accommodation.  He wrote on January 20, 2011 to his superior and to Human Resources:  "I am now at a loss for words.  I do not know what more I need to do to have someone make a reasonable effort to enter into an informed interactive conversation to identify the appropriate reasonable accommodation!"

31.     But in response, Defendant's Human Resources department denied the request and stated: "You must take responsibility for performing all the essential functions of your job as a Sr. Project/Process Analyst."

31.     In February of 2011, Plaintiff consulted further with his doctor about increasing demands at work and how it affects someone with ADHD and dyslexia.  His doctor advised him:  "The increase in demands in response to a request for appropriate accommodation is almost sure to

7

produce the opposite of the desired effect, not only for those with a handicapping condition such as ADHD/LD, but for virtually anyone (not to mention the psychological consequences)."

32.     Plaintiff provided this input from his doctor to Defendant.  Defendant claimed it welcome any suggestions by Plaintiff's doctor, but it was plain that Defendant was intent upon forcing Plaintiff to do the position for which his disability may him ill-fitted.

33.     On February 18, 2011, Plaintiff's doctor wrote:

> "Jim:  As discussed in our last session, I understand that your supervisor was open to suggestions as related to your work environment; specifically regarding the tasks etc. that have been given ostensibly to help to perform your job more efficiently.  I've given this further thought, and fear that any specific recommendations are contraindicated as that route has already been pursued by Dr. Zaplac."

Plaintiff doctor went on to outline Plaintiff's disability and Defendant's disconnect with these issues.

34.     Plaintiff returned to work on or about March 2, 2011.

35.     On March 4, 2011, Plaintiff outlined the nature of his disability, requested that Defendant employ someone with "credentialed professional resource with experience/background working with employees with cognitive disabilities."  Plaintiff also stated that his doctor would be available to speak to Defendant as part of an ongoing interactive process.

36.     On April 15, 2011, Plaintiff was requested to attend a meeting which, he thought, would be to finally address his need for reasonable accommodations and the avoidance of discipline for a manifestation of his disabilities.

37.     Instead, Plaintiff was given negative performance reviews and informed his employment had been terminated.  Defendant escorted Plaintiff from the property.

38.     Accordingly, Defendant's actions, above, have denied Plaintiff substantial income (back pay and front pay), benefits, and the failure to accommodate/interact, and the termination, have

caused him worry, anxiety, financial distress, humiliation, and embarrassment. Accordingly, Plaintiff respectfully must seek wage loss, benefits loss, reinstatement, compensatory damages, and attorneys fees and costs. He also seeks punitive damages as Defendant's actions in denying Plaintiff accommodation, disciplining him for reasons caused by his disability, and terminating him because of his disability, were not simple negligence but purposeful or reckless decisions.

## V. CAUSES OF ACTION UNDER THE ADAAA

39. Plaintiff respectfully asserts the following causes of action under the ADAAA:

   A. Failure to reasonably accommodate;
   B. Hostile Work Environment/ Harassment;
   C. Retaliation for requesting reasonable accommodation; and
   D. Discriminatory discipline ad discharge because of disability.

## VI. PRAYER FOR RELIEF

40. WHEREFORE, the Plaintiff prays for the following relief:

   A. That proper process issue along with a copy of this complaint requiring the Defendant to appear and answer;

   B. Grant a permanent injunction enjoining Defendant FedEx Corporate Services Inc., their officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which discriminates on the basis of disability.

   C. Order Defendant FedEx Corporate Services Inc. to institute and carry out policies, practices, and programs that provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

   D. That Plaintiff be awarded damages in the amount of any wages, salary, employment benefits or other compensation, including, but not limited to backpay and front pay, plus prejudgment interest;

E. Any actual monetary loss sustained by the Plaintiff;

F. Compensatory damages for, emotional pain, suffering, inconvenience, humiliation, loss of self-esteem, along with punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.;

E. Reasonable attorneys' fees;

F. The costs and expenses of this action;

G. Such other legal and equitable relief to which Plaintiff may be entitled and/or relief as the Court deems necessary and proper in the public interest; and

H. Plaintiff further demands a Jury to try this cause.

    Respectfully submitted,

    GILBERT RUSSELL McWHERTER, PLC


    s/Justin S. Gilbert
    Justin S. Gilbert (TN Bar No. 017079)
    633 Chestnut St., Suite 600
    Chattanooga, TN 37450
    423.499.3044 (telephone)
    Facsimile: 731-664-1540
    jgilbert@gilbertfirm.com



    Jonathan L. Bobbitt (TN Bar No. 23515)
    Jessica F. Salonus (TN Bar No. 28158)
    101 North Highland Ave
    Jackson, TN 38301
    Telephone: 731-664-1340
    Facsimile: 731-664-1540
    jbobbitt@gilbertfirm.com

    jsalonus@gilbertfirm.com

    **ATTORNEYS FOR PLAINTIFF**